IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | |
|---|---|
| **Curtis Ray Brooks,** )<br>  **Plaintiff,** )<br> )<br>**v.** )<br> )<br>**Tonya Chapman, et al.,** )<br>  **Defendants.** ) | 1:22cv305 (LMB/JFA) |

## MEMORANDUM OPINION

Before the Court are cross motions for summary judgment filed by defendants Tonya Chapman, Kemba Smith-Pradia, A. Lincoln James, Sherman Lea Sr., and Linda Bryant (collectively "defendants")[1] and pro se plaintiff Curtis Ray Brooks ("plaintiff") in this civil rights action arising under 42 U.S.C. § 1983. Alongside their Motion for Summary Judgment, defendants filed a Roseboro[2] notice advising plaintiff of his right to respond. [Dkt. No. 25]. In response, plaintiff has submitted a "Counter-Motion for Summary Judgment and Opposition to Defendants' Motion for Summary Judgment" and a Supporting Memorandum of Law. On March 21, 2023, defendants filed a Response, and on April 12, 2023, plaintiff filed a Reply. This matter is therefore fully briefed and ready for consideration. For the reasons explained below, plaintiff's Motion for Summary Judgment will be denied and defendants' Motion for Summary Judgment will be granted.

---

[1] Former Virginia Governor, Ralph Northam, was originally included as a defendant, but he was dismissed from this action on December 22, 2022. [Dkt. Nos. 20, 21].

[2] See Roseboro v. Garrison, 258 F.2d 309 (4th Cir. 1975).

## I. Background

Plaintiff alleges that defendants, all of whom are former members of the Virginia Parole Board ("Parole Board" or "Board"), violated his rights in several ways when they denied him parole in 2021.[3] [Dkt. No. 1]. With respect to plaintiff's claims, the following facts are undisputed.

After being convicted in 1993 of one count of first-degree murder, one count of robbery of a business with a gun or simulated gun, and two counts of use of a firearm in commission of a felony,[4] plaintiff began serving two life sentences plus six years in the custody of the Virginia Department of Corrections ("VDOC"). [Dkt. No. 24-2] at ¶ 4.

Plaintiff became eligible for discretionary parole on June 8, 2010. [Dkt. No. 24-2] at ¶ 5. Once an inmate becomes eligible for discretionary parole, the Board determines whether parole will be granted. To determine whether an inmate is suitable for release, the Board considers several factors, including the nature of the inmate's offense or offenses, the length of the sentence imposed, the amount of time the inmate has served, the inmate's criminal history, the inmate's prior experience and conduct under supervision, whether the inmate would pose a risk to his community, the inmate's personal and social behavior, the inmate's institutional experience, whether the inmate has exhibited changes in motivation and behavior, the inmate's

---

[3] In addition to evidence relevant to their 2021 decision, defendants have submitted evidence regarding their 2022 decision to deny plaintiff parole, and plaintiff has responded to that evidence; however, because the Complaint only refers to the Board's 2021 denial of parole, only that decision is at issue in this civil action. Consequently, the Court will not address any evidence related to other Parole Board decisions.

[4] Plaintiff disputes that he was convicted and sentenced for two firearm-related felonies and "declares that the Defendants [sic] Sentence Summary is factually inaccurate." [Dkt. No. 33] at 4. Plaintiff does not, however, offer any evidence—other than his own unsubstantiated allegations—to call into question the validity of defendants' view of the evidence.

2

release plan, and the existence of community and family resources to assist the inmate in rejoining society. Id. at ¶ 8. Additionally, interested parties such as friends, family members, or victims may meet with members of the Parole Board to present information relevant to the decision to grant or deny parole. Id.

By statute, the Board consists of up to five members. See Va. Code § 53.1-134. In most cases that come before the Board, an inmate will be granted parole if three members agree the inmate qualifies for release; however, an inmate like plaintiff who is serving a life sentence or multiple life sentences will be released only if at least four Board members agree. [Dkt. No. 24-2] at ¶ 10.

On March 2, 2021, in response to Brooks's application for parole, a parole hearing examiner interviewed him. Id. at ¶ 12. In April 2021, the Board reviewed plaintiff's application for parole and the examiner's report and, on April 7, 2021, issued a letter denying the application. [Dkt. No. 24-2] at ¶ 10.[5] In that letter, the Board explained to plaintiff that his request for parole was denied because he needed "to show a longer period of stable adjustment," he "should serve more of [his] sentence prior to release on parole," and because of the "[s]erious nature and circumstances of [his] offense(s)." [Dkt. No. 24-2] at ¶ 12 and pp. 68-69. The letter advised plaintiff of his right to request reconsideration of the decision within 60 days and explained that the Board would reconsider its decision only if presented with "significant new information not previously reviewed by the Board" or if the Board was shown to have committed "significant error in information of application of [its] policies or procedures." [Dkt. No. 24-2] at ¶ 13.

---

[5] Defendant Linda Bryant retired on March 15, 2021 and did not participate in the decision to deny plaintiff parole in April 2021. See [Dkt. No. 24-1] ¶ 4.

Plaintiff sought reconsideration of the decision. On August 17, 2021, the Board declined to reconsider its decision because plaintiff had failed to provide any new or significant information; the information plaintiff provided did not affect the reasons he was not granted parole; and the information provided did not show that the Board had committed a significant error with respect to application of its policies and procedures. Id. at ¶ 15 and p. 70.

## II. Standard of Review

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A dispute is genuine if a reasonable jury could return a verdict for the nonmoving party," and "[a] fact is material if it might affect the outcome of the suit under the governing law." Variety Stores v. Wal-Mart Stores, Inc., 888 F.3d 651, 659 (4th Cir. 2018). Once the moving party has met its burden to show that it is entitled to judgment as a matter of law, the nonmoving party "must show that there is a genuine dispute of material fact for trial … by offering sufficient proof in the form of admissible evidence." Id. (quoting Guessous v. Fairview Prop. Inv'rs., LLC, 828 F.3d 208, 216 (4th Cir. 2016)). In evaluating a motion for summary judgment, a district court must consider the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences from those facts in favor of that party. United States v. Diebold, Inc., 369 U.S. 654, 655 (1962).

When confronted with cross-motions for summary judgment, a "court must review each motion separately on its own merits to determine whether either of the parties deserves judgment as a matter of law." Rossignol v. Voorhaar, 316 F.3d 516, 523 (4th Cir. 2003) (internal quotation marks and citation omitted). As to each separate motion, the court must separately resolve factual disputes and competing rational inferences in favor of the nonmovant. Id

4

### III. Analysis

The Complaint raises the following claims:

1. Defendants violated plaintiff's Sixth and Fourteenth Amendment rights to be fairly considered for release on parole by failing to provide him a meaningful statement of reasons for denial of parole and by treating him differently than similarly situated inmates.

2. Defendants violated plaintiff's Sixth and Fourteenth Amendment rights to due process and equal protection by arbitrarily and capriciously concluding that he should serve more of his sentence before being released on parole.

3. Defendants violated plaintiff's Sixth and Fourteenth Amendment rights to a fair parole process by failing to provide him information regarding areas in which he could improve and by relying on the severity of his offense without considering positive information favoring his release on parole.

4. Defendants violated plaintiff's Sixth and Fourteenth Amendment rights to a fair parole process by failing to divulge the rules, policies, and legal authorities they applied in reaching their decision.

5. Defendants violated plaintiff's Sixth and Fourteenth Amendment rights to equal protection and a fair parole process because the Board had fewer than five members when it considered him for parole.

6. Defendants violated plaintiff's Sixth, Eighth, and Fourteenth Amendment rights to a fair parole process because they had predetermined that they would deny him parole.

[Dkt. No. 1] at 7-35.

#### A.   **Application of Sixth Amendment and Equal Protection Clause**

Plaintiff invokes the Sixth Amendment in each of the six claims identified in the Complaint and invokes the Fourteenth Amendment's Equal Protection Clause in three. Defendants are entitled to judgment in their favor as to any claims arising under these sources of law. First, as the Court expressed in its December 22, 2022 Memorandum Opinion dismissing Governor Northam as a defendant, the Sixth Amendment is irrelevant to parole proceedings and

therefore irrelevant to plaintiff's claims.[6] See [Dkt. No. 20] at 4. Plaintiff has conceded this point in his Opposition to defendants' Motion for Summary Judgment. See [Dkt. No. 27] at 10.

Although the Equal Protection Clause of the Fourteenth Amendment could theoretically apply to a claim related to parole proceedings, the factual record in this action does not contain any admissible evidence that supports such a claim. "To succeed on an equal protection claim, a plaintiff must first demonstrate that he has been treated differently from others with whom he is similarly situated and that the unequal treatment was the result of intentional or purposeful discrimination." See Morrison v. Garraghty, 239 F.3d 648, 654 (4th Cir. 2001). Here, plaintiff has failed to provide evidence identifying[7] any other inmates who received different treatment by defendants in their parole proceedings, let alone evidence that defendants *intentionally* treated plaintiff differently than other inmates. Consequently, his equal protection claims fail.

---

[6] The December 22 Opinion explained that:

> [The Sixth Amendment] provid[es] persons accused of criminal offenses with legal protections during criminal prosecutions. See, e.g., Kirby v. Illinois, 406 U.S. 682, 690 (1972). Because parole decisions are "not part of a criminal prosecution," the Sixth Amendment does not provide plaintiff any basis for relief. See Morrissey v. Brewer, 408 U.S. 471, 480 (1972) (observing that parole "arises after the end of the criminal prosecution, including imposition of sentence").

[Dkt. No. 20] at 4.

[7] Plaintiff has submitted partial newspaper clippings describing actions taken by the Parole Board. Because these articles do not include sufficient detail about specific cases, they fail to show that plaintiff was similarly situated to any inmates who allegedly received different treatment. See, e.g., [Dkt. No. 27-1] at 1-2.

6

B. **Claims 1, 2, 3, and 6**

Although Claims 1, 2, 3, and 6 present subtly different grounds for relief, in essence, each claim questions the adequacy of the process plaintiff received in being considered for parole in 2021.[8] These claims are without merit.

The Due Process Clause of the Fourteenth Amendment provides that a state shall not "deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. § XIV, § 1. Thus, in analyzing an inmate's due process claim, a court must consider whether the plaintiff has been deprived of something in which he had a protectable interest. Greenholtz v. Inmates of the Neb. Penal & Corr. Complex, 442 U.S. 1, 7 (1979); Slezak v. Evatt, 21 F.3d 590, 594 (4th Cir. 1994). If a complaint successfully identifies a protectable interest, a reviewing court must determine whether the state afforded the plaintiff the minimum procedural protections required by the Fourteenth Amendment in depriving him of that interest. Morrissey v. Brewer, 408 U.S. 471, 481 (1972); Slezak, 21 F.3d at 593.

Virginia state prisoners, including plaintiff, have a limited liberty interest in being considered for release on parole. See Burnette v. Fahey, 687 F.3d 171, 181 (4th Cir. 2012). As both the Fourth Circuit and the Supreme Court of the United States have made clear, the level of procedural protection owed to a state prisoner being considered for parole is "minimal." See Swarthout v. Cooke, 562 U.S. 216, 220 (2011); Vann v. Angelone, 73 F.3d 519, 522 (4th

---

[8] These claims also invoke the Sixth Amendment, but, as explained above, that Amendment is irrelevant to the parole process. In Claim 6, plaintiff also asserts that defendants violated his rights under the Eighth Amendment by "overlooking all of his positive strides, year after year." [Dkt. No. 1] at 35. Because it is well settled that the denial of discretionary parole does not constitute punishment, the Eighth Amendment is irrelevant to this action. Cf. Lustgarden v. Gunter, 966 F.2d 552, 555 (10th Cir. 1992) ("Denial of parole under a statute dictating discretion in parole determination does not constitute cruel and unusual punishment."); Patterson v. Kaine, No. 3:08cv490, 2010 WL 883807, at *6 (E.D. Va. Mar. 11, 2010) ("Requiring Plaintiffs to serve the unexpired portion of their sentences does not constitute cruel and unusual punishment.").

Cir. 1996)). Specifically, all that is owed is "an opportunity to be heard and," if relevant, "a statement of reasons indicating ... why parole has been denied." Bowling v. Va. Dep't of Corrs., 920 F.3d 192, 200 (4th Cir. 2019) (quoting Bloodgood v. Garraghty, 783 F.2d 470, 473 (4th Cir. 1986)); see also Swarthout, 562 U.S. at 221 (opining that "the beginning and the end of [a] ... federal court's inquiry" into whether a potential parolee's due process rights have been upheld is to determine whether the inmate had "an opportunity to be heard and was provided a statement of the reasons why parole was denied").

The record makes clear that plaintiff received the level of process he was owed. Indeed, a hearing examiner interviewed plaintiff on March 2, 2021, thereby providing plaintiff an opportunity to be heard. [Dkt. No. 24-2] at 4, ¶ 12. And on April 8, 2021, the Parole Board sent plaintiff a letter informing him that he was being denied parole because he "need[ed] to show a longer period of stable adjustment"; "should serve more of [his] sentence prior to release on parole"; and because of the "[s]erious nature and circumstances of [his] offense(s)." [Dkt. No. 24-2] at 4, ¶ 12; id. at 68-69. After plaintiff received this letter, he requested reconsideration of the Board's decision. Id. at 70-71. The Board denied this request on August 17, 2021, providing him with reasons for that denial. Id. at 71.

Although plaintiff believes the Parole Board provided him insufficiently "meaningful" reasons—going as far as to call those reasons "arbitrary and capricious"—courts within the Fourth Circuit have repeatedly found reasons similar to the Board's reasons constitutionally adequate. See, e.g., Reynolds v. Virginia, No. 7:17-cv-517, 2019 WL 691793, at *5 (W.D. Va. Feb. 19, 2019) ("Here, the Board satisfied the minimum due process requirements when they denied Plaintiff parole because of the seriousness of his crime and his pattern of criminal conduct."); Hoskin v. Brown, No. 1:14cv759, 2015 WL 5247595, at *5 (E.D. Va. Sept. 8, 2015)

8

(finding that the Parole Board's identification of the "serious nature and circumstances of offense" and the "risk to the community" plaintiff posed satisfied due process).

Plaintiff additionally claims that the Board should have supplied him a "scoring range" that informed him of "the areas upon which ... he needs to improve," see [Dkt. No. 1] at 15, but the Board was under no constitutional obligation to provide plaintiff a strategy or roadmap for securing release on parole, see, e.g., Hoskin, 2015 WL 5247595, at 5 (observing that "there is no constitutional requirement for the [Board] to provide plaintiff with advice on how to overcome the obstacles of parole review").

Finally, plaintiff's argument that the Board "predetermined" it would deny him parole is without merit. Reviewing a similar argument—albeit one raised at the motion to dismiss stage—the Fourth Circuit rejected the notion that the Parole Board's provision of so-called generic or boilerplate reasons for denying parole allowed for any inference that the Board had predetermined its decision or failed to provide honest and individualized consideration of an inmate's parole application. See Burnette v. Fahey, 687 F.3d 171 (4th Cir. 2012). In Burnette, the Fourth Circuit concluded that all of the appellant inmates had been "convicted of a very serious crime or crimes, for which [they] received [] very lengthy sentence[s]," and that absent specific factual allegations undermining such a proposition, "[i]t would be well within the Board's discretion to consider such a prisoner holistically and nevertheless [] determine that he or she has not served a sufficiently lengthy sentence in light of the grave crime." Id. at 183.

The same is true here. There is no evidence in this record suggesting that the Parole Board predetermined its decision to deny plaintiff parole. To the contrary, the record reflects that the Board used its finite resources to have plaintiff interviewed and later met to consider his application. It also reviewed and denied his request for reconsideration, accurately observing

9

that plaintiff had not provided any information that called into question the reasons he had been denied parole.

For all of these reasons, defendants are entitled to judgment in their favor as to Claims 1, 2, 3, and 6.

C.  **Claim 4**

In Claim 4, plaintiff suggests that defendants somehow acted to "reduce his double life-sentences" without "divulging how [the Parole Board's] rules, regulations, policies, guidelines and laws" allowed this to occur. [Dkt. No. 1] at 29. Plaintiff's basis for this claim is that, because he accrued "good time" credits which reduced the time he had to wait to become eligible for discretionary parole, time had been "subtract[ed]" from his sentence. Id. at 30. Plaintiff appears to suggest that he is no longer bound by a life sentence and, as such, is eligible for "mandatory parole" because he has served half of the sentence imposed upon him. Id. He concludes this claim by suggesting that "the states [sic] parole process regarding prisoner's [sic] sentenced to life within the V.D.O.C., are [sic] confusing, vague, and without 'judicial authority.'" Id.

There is no evidentiary basis on which to find that plaintiff's sentence has been modified in any way. Rather, the evidence establishes conclusively that plaintiff is, indeed, serving multiple life sentences. See, e.g., [Dkt. No. 24-2] at 8 (a VDOC Sentence Summary reflecting that plaintiff is serving multiple life sentences plus six years); [Dkt. No. 24-2] at 9-15 (a VDOC Summary Audit also reflecting that plaintiff is serving multiple life sentences plus six years).[9] In

---

[9] Although it has not been presented as evidence, the VDOC's website also reflects that plaintiff is serving multiple life sentences. See Offender Locator, https://vadoc.virginia.gov/general-public/offender-locator/ (type "Curtis" into field entitled "First Name"; type "Brooks" into field entitled "Last Name"; click "Locate" button) (last accessed June 20, 2023).

short, as defendants observe, "[w]hether [good time] credits helped shorten the time before [plaintiff] became eligible to be considered for discretionary parole is immaterial to the fact that he remains incarcerated for multiple life sentences." [Dkt. No. 24] at 12. For these reasons, judgment will enter in defendants' favor as to Claim 4.

### D. Claim 5

In Claim 5, plaintiff complains that he was considered for parole by a Parole Board panel consisting of fewer than five members, arguing that this violated his right to due process.[10] [Dkt. No. 1] at 32. This claim was previously rejected with respect to its application to Governor Northam when the Court concluded that Va. Code § 53.1-134 did not require the Board to have five sitting members at any given time, and did not create a liberty interest in being considered for release on parole by a five-member panel of the Board. [Dkt. No. 20] at 8. Ignoring this conclusion, plaintiff "stands on the same interpretation" of the statute set out in his Complaint,

---

[10] Plaintiff also presents this claim in the equal protection context, but he provides different theories for relief in his Complaint and his Opposition/Countermotion. In his Complaint, he argues that it is a violation of equal protection that "he [must] receive 4 of the 5 Board members [sic] votes in order to be granted parole release due to his having been [sic] sentenced to life in prison, while other candidates who have violent offense with [less than life sentences], are only required to receive 3 of the 5 Board members [sic] votes." [Dkt. No. 1] at 33. In his Opposition/Countermotion, plaintiff argues that, because he was deprived of parole consideration by a full slate of the Board while other inmates were not, he suffered a violation of his rights. [Dkt. No. 27] at 20.

This second theory was not alleged in the Complaint and therefore does not entitle plaintiff to relief. See Zachair, Ltd. v. Driggs, 965 F. Supp. 741, 748 n.4 (D. Md. 1997) (a plaintiff is "bound by the allegations contained in [his] complaint and cannot, through the use of motion briefs, amend the complaint."), aff'd, 141 F.3d 1162 (4th Cir. 1998). The first claim fails on its face because plaintiff does not compare himself to "similarly situated" inmates; he compares himself to inmates who, unlike him, were not sentenced to life imprisonment. See Morrison v. Garraghty, 239 F.3d 648, 654 (4th Cir. 2001) ("To succeed on an equal protection claim, a plaintiff must first demonstrate that he has been treated differently from others *with whom he is similarly situated* and that the unequal treatment was the result of intentional or purposeful discrimination.") (emphasis added).

see [Dkt. No. 27] at 19, arguing that consideration by a panel of the Board with fewer than five members violated his right to due process. He also asserts that the Va. Code § 53.1-134 is "ambiguous" and yet somehow "emphatically" endows on him a "vested liberty interest" in being considered by a full panel of the Board. Id.[11]

Plaintiff's murky and contradictory arguments are meritless. As previously discussed, the language of Va. Code § 53.1-134 is clear and simply does not provide any foundation for plaintiff's claim. For this reason, defendants are entitled to judgment in their favor as to this aspect of Claim 5.

One further point requires brief attention. In his Opposition/Countermotion, plaintiff raises the novel argument that there is a dispute of fact as to whether he received consideration for parole by even fewer than four members of the Board. [Dkt. No. 27] at 9. His basis for this argument is tenuous. First, plaintiff recognizes that defendant Linda Bryant—who had retired before he was considered for parole in 2021—was not involved in his parole consideration process. See [Dkt. No. 24-1] at ¶ 4. Plaintiff then highlights a statement by Chadwick Dotson— the current Chair of the Board—averring that the Chair of the Parole Board does not necessarily vote on every case. See [Dkt. No. 24-2] at ¶ 10. Plaintiff infers from that statement that defendant Tonya Chapman, who was the Chair when he was denied parole, may not have voted to deny him parole in 2021. To support this speculative inference, plaintiff calls Chapman's electronic signature a "forgery," [Dkt. No. 27] at 4, and suggests that her failure to hand-sign his denial letter is evidence that she was not involved in his parole consideration process, see [Dkt.

---

[11] Plaintiff also relies on a confusing double-negative to suggest that the statute in question does not *not* "mandate or require ... there be a quorum of five (5) members of the Board, at least." [Dkt. No. 27] at 19.

No. 33] at 8. Taken together, plaintiff argues that it is an open question as to whether he was considered for parole by only three members of the Parole Board. This is important, he concludes, because as someone serving life in prison he needs the approval of four Board members to receive parole. If only three members considered his case, he reasons, he would naturally be unable to secure release on parole.

Plaintiff's position is untenable for several reasons. First, plaintiff's attempt to conjure a dispute of fact by layering inference upon inference is unavailing. See Hinkle v. City of Clarksburg, 81 F.3d 416, 423 (4th Cir. 1996) (holding a claim was "ripe for an adverse summary judgment determination" when "it was based upon a theory without proof" and dependent on "speculation and the piling of inferences"); Barwick v. Celotex Corp., 736 F.2d 946, 962 (4th Cir. 1984) (rejecting plaintiff's "attempt[] to build one vague inference upon another vague inference to produce a factual issue").

Moreover, even if plaintiff had been considered for parole by three or fewer members of the Board, this would amount to no more than a violation of the Board's guidelines and would not equate to a constitutional violation cognizable in federal court. Cf. Douglas v. Chapman, No. 3:22cv86, 2022 WL 2955282, at *6 (E.D. Va. July 26, 2022) (citing Burnette v. Fahey, No. 3:10cv70, 2010 WL 4279403, at *9-10 (E.D. Va. Oct. 25, 2010); Hill v. Jackson, 64 F.3d 163, 171 (4th Cir. 1995)). For these reasons, defendants are entitled to judgment in their favor as to Claim 5.

## IV. Conclusion

For the reasons stated above, defendants' Motion for Summary Judgment will be granted, plaintiff's Counter-Motion for Summary Judgment will be denied, and judgment will be entered in defendants' favor by an order issued with this Memorandum Opinion.

Entered this 4th day of August 2023.

Alexandria, Virginia

/s/ *signature*
Leonie M. Brinkema
United States District Judge